Yes, I am. Okay, thank you. We have for the case this afternoon a number 12-9006, Michael v. Wetzel, Ms. Donella, and Mr. Parker. Yes, Your Honor. Your Honors, I'd like to reserve seven minutes for rebuttal, please. May it please the Court, my name is Amy Donella and I represent Hubert Michael. Your Honors have asked the parties to answer three questions for you, and I will address those directly, but I would like to spend one minute highlighting five factors that, when taken together, make this a case that is unlike any other this Court has probably ever seen, and unlike any case this Court ever will see. Five factors are these. Mr. Michael's brain damage, cognitive defects, and mental illness have played a role in everything that has gone on in this case. His waiver was a manifestation of that, of those mental impairments. Number two... Let me just stop on the first one. The problem that we have is that you've had two Picker Court decisions and two District Court decisions, all four finding that he was competent. We are not asserting that Mr. Michael was incompetent, Your Honor, and if I could go through this list of five things, I promise I will get directly back to that. Second, Dr. Wettstein, the Court-appointed psychiatrist on whose opinion the District Court relied in finding that Mr. Michael's waiver was valid and voluntary, wrote to this Court within two months of the dismissal of counsel and the dismissal of Mr. Michael's habeas petition to say that he was no longer certain and had serious doubts as to whether or not Mr. Michael's waiver actually was voluntary. Likewise, Judge Cosgrove, who was representing Mr. Michael, was back before this Court again two months after the decision by the District Court and has pressed this issue with the Court ever since that time that Mr. Michael's initial waiver wasn't valid. Three, Mr. Michael has never had any review of any of his constitutional claims, claims that this Court has previously identified as being significant. Fourth, at trial, Mr. Michael had possibly the worst lawyering of any person who has ever been before this Court. He had a capital defense lawyer who stipulated to his death sentence, stipulated to the absence of mitigating evidence, and did so even though there was high-quality, well-recognized, and quite frankly, heart-wrenching mitigation evidence available, including red flags of brain damage, physical and emotional abuse and neglect, suicide attempts, other forms of mental illness, cognitive defects, and remorse. And finally... But how did he not stipulate to it inasmuch as Mr. Michael wanted him to do that? No, Your Honor, actually he didn't. In this case, Mr. Michael wanted mitigation presented up until just a few days before trial, and trial counsel actually had to be ordered by the trial judge to go out and investigate. And at the PCRA hearing in this case, even after having been ordered to investigate mitigation, trial counsel testified that his investigation was at best cursory. And then there's the fifth factor, if I might, which is that this is a capital case, which means that a decision not to grant review will result in this mentally impaired man who has substantial constitutional claims, never had a penalty determination by a judge or jury, and never had federal reviews of his claim being executed. This court now has equitable power to ensure that that doesn't happen, and I would urge that the court exercise that equitable authority under Rule 60b-6. Let's come back to the beginning then. You're saying that while he's mentally impaired, it did not affect his competence? Your Honor, you know, there are different standards for competence and voluntariness of waiver. And we accept the fact that he was competent, but his waiver was not voluntary. And even if this court were to find that it was voluntary, it's... The only thing we have is, what, a 2004 decision of judgment asking that the waiver was voluntary, right? Yes, but within eight weeks of issuing that decision, based on Dr. Wettstein's testimony to the court and mental health evaluation of the court, which said that it was voluntary, Dr. Wettstein changed his opinion and has raised with this court serious doubts. And that is in part why, after three competency hearings, we sent it back, ultimately. Because remember, when it first came up to us, and I guess that's when I first became involved, April-May of 2005, he said that he didn't want to appeal. And I think that's when you were involved, and then he... Is that where you got your opinion? No, our office was only involved until we were removed as counsel in... 2004? In 2004. 2004. March of 2004. So in 2005, he said he didn't want to appeal. And then we said, look, you've got to make a decision. And then the next day, he says he did want to appeal. So ultimately, we sent it back, without a ruling on the 848 issue, for another, the fourth competency hearing. And it was determined in 2007 that he was competent for the fourth time. But, Your Honor, Your Honor, when it was sent back for remand at that point, it was determined that he was competent to decide that he wanted to go forward with his appeals. And so it was found that he was competent to make a decision that he wanted to live and to litigate his claims. I think the much more telling thing is that Judge Wedstein, I'm sorry, Dr. Wedstein, was not authorized to do an evaluation at that point as to whether or not there had been a voluntary waiver, a waiver that was a manifestation in the first instance of his mental health impairments. Where has the 2004 decision that it was voluntary ever been overturned? It hasn't, has it? It has not, because this Court has never had the ability to review it. This Court defined I guess at this point we're at the 60B stage. So the question then becomes, first question, I suppose, Judge Jones had ruled that there was not jurisdiction. Why don't you address that issue first? I'd be happy to, Your Honor. I mean, you're getting ahead of yourself because the District Court held that this was a second or successive petition, that he did not have permission from the Court of Appeals to file it, and therefore the matter was over as far as the District Court went on to address the possibility of Rule 60. But if the District Court was correct, then we don't have any choice but to affirm, because it didn't have jurisdiction. Judge Greenberg, I'm just about to take that issue up, and we have briefed it pretty thoroughly, I believe. But I'd like to point something out to the Court, because first of all, the standard of review for Judge Jones' determination is reviewed de novo, because it's an issue of the legal status of whether this is a 60B motion or a successive petition. But I want to make absolutely clear for the Court what the opinion in Gonzales says. The last paragraph of Justice Scalia's opinion says, and I quote, We hold that a Rule 60B6 motion in a 2254 case is not to be treated as a successive habeas petition if it does not assert or reassert claims of error in the move-in state conviction. A motion that challenges only the District Court's failure to reach the merits does not without precertification by the Court of Appeals pursuant to 2244B3. The quote starts with the words, we hold that. That is the holding of the case, and that's exactly what you have here. You have a case in which there was no merits review at any time of Mr. Michael's habeas petition. He has not asserted claims of error in his 60B motion of his state conviction. He has not reasserted claims of error in his move-in state conviction. I don't think this could be a clearer case of this being a Rule 60B motion rather than it being a successive petition. But didn't the Supreme Court put a qualification of that in a footnote where the petitioner himself causes the court not to hear the matter? What did the court say about that? In footnote 5, first of all, I don't think the holding could be clearer, and that's the way the court ends its opinion. But footnote 5 is discussing the issue of whether or not someone who has had merits review of their claims can go back and say, wait a second, I've got something here that I need to tell you that goes to the integrity of the proceeding, and therefore what you should do is reopen this proceeding because the very integrity of the proceeding has been compromised either by fraud of one of the parties or by lack of subject matter jurisdiction, for example. The case that's in fact cited in footnote 5 is a case where somebody committed fraud on the court. And so I read footnote 5 simply to say that we want to make clear where there is fraud on the court, for example, and there's been a merits determination. That might be grounds for reopening. Where there's been fraud on the court and there's been a merits determination and the fraud has been committed by the movement himself, that would not qualify for reopening the case. One other point about that is that even in footnote 5, the Supreme Court says that the district court's dismissal based on a movement's own conduct does not ordinarily go to the very case. This is a case where movement's own conduct is something that was impelled by his mental illness and the very doctor appointed by the court to discuss that with the district court and render his opinion to the district court. As soon as he saw that Mr. Michael was vacillating, he had based his entire opinion on the fact that he believed Mr. Michael's desire to waive had been consistent over time. And when Mr. Michael vacillated and said, wait, I do want, I do want to have my claims reviewed, Dr. Wettstein said, wait a second, the whole basis of my opinion is in question now and I need to reevaluate him because I don't think, I have serious doubts as to whether or not that was a voluntary waiver given what has happened within weeks of this petition being dismissed. And Judge Cosgrove came to this court over and over again and said, you know, take it, please, you know, take a step back and do what you have done in other cases, do what has been done in other, in other circuits, such as the case in the Seventh Circuit and the Eighth Circuit in Armantrout and St. Pierre, what was done in this circuit, in David Hammer's case and Daniel Sarancic's case, where you said when a litigant vacillates, a capital litigant, not just any litigant, but a capital litigant vacillates as to whether or not he wants first-time review of his federal habeas claims, then, then we should allow him to do that and we should warn him. We should warn him at that time that once he has said he wants that review, we will not listen and we will not address his pro se petitions. Take a step back. Sure. If you have a person who says that I don't wish to contest any more matters relating to my sentencing in a capital case, your blink response is to say, hmm, that isn't, that's counterintuitive. It needs to be investigated. This was investigated and it was found that it was a valid waiver and people can give up their constitutional rights. I mean, that's, that's just a fact. They, they can do it if they are found to be competent. If this person's found to be competent four times and it's also found directly by Judge Van Aske when he was a district judge that he has waived, um, how do you, how do you go further? Your Honor, I, I, I think the issue of Mr. Michael's competency is, is one that, you know, is, is really not entirely relevant here because the issue is really the voluntaryness of his waiver. Well, if he was incompetent, then you would have, you would have a great case that it doesn't make any difference what he's done. He was incompetent. Well, no, that's, that's absolutely true. And, and, but the other thing is, you know, I think as, as in any of these cases, you have to look at the totality of the circumstances and, and of course you're directed to do that by, by the cases here. This is, this is an equitable determination. You've had cases before this court where, where there hasn't been an assertion of incompetence or involuntariness and you've permitted people who have vacillated to go forward with their capital federal appeals. But, but there are, you know, and, and this is, I think, also where the district court abused its discretion in, in Mr. Michael's case. So let's just back up for a second. You're saying that the court erred in, the district court erred in concluding that it lacked jurisdiction because why? Under 60, for the 60 v. 6 motion. Because Mr. The court said it was second or successive, therefore it lacked jurisdiction. You're saying it did not lack jurisdiction because? Because in Gonzales, the Supreme Court held very clearly that a rule six, that and said, we hold that a rule 60 v. motion in a 20 to 54 case is not to be treated as a successive APIS petition if it does not assert or reassert claims of error in the move in state petition, conviction, which our 60 v. motion did not do. And, and what, what we asserted was not a claim that went back to the state conviction. It's a claim that went back to the determination that Mr. Michael ought to be found to have given a voluntary waiver and a waiver, even if it's, even if you find it to be voluntary, that was nevertheless the product and the manifestation of his symptoms of mental illness. Might it not be a better argument to say that the second or successive 20 to 54 petition, where it wasn't second or successive because he never had the merits ruled on? Yes, that's exactly what, yes, absolutely he never had the merits ruled on. Let's assume for just a moment you're right. Then the question becomes whether this 60 v. motion, whether it be 60 v. 2 or 60 v. 6, was timely. Now, if it was 60 v. 2, as your opposing counsel argues, it's not timely. Here, the first evidence we have of a possibility, and that's all that I can find in the record, is a possibility of Asperger's. Assuming for the moment Asperger's could, could really be relevant here, but let's assume that it could be, was 2007. And the motion was brought in 2012. How is that reasonable timing? Your Honor, it's reasonable timing because at every stage of this litigation, Judge Cosgrove came to this court and said, this needs to be reevaluated. And, and he raised the issue of, of his own opinion to the district court. Judge Cosgrove was before this court. He was before the district court when the district, in this case, was remanded for the competency hearing. He begged the district court to broaden the scope of, of what the district court was going to consider, which was, by direction of this court, only the issue of competency to go forward with the appeal on the 848 ground. And the district court said, I can't do that. I don't have the authority to do that. Well, the district court did say that, look, if, if I had jurisdiction, then I would agree that it was timely because of the way the procedural, our 2011 decision worked out, et cetera, on the 848. Yes. And so, okay, let's assume you went on that too. Now you have to show that there were extraordinary circumstances in order to reopen. What are your extraordinary circumstances? The extraordinary circumstances are, actually, we have quite a number of them. We have a mentally impaired litigant. We have a court-appointed psychiatrist who thinks that the voluntariness of Mr. Michael's waiver, he, he gave a ruling, an opinion in error because his initial opinion was based on what he thought was a consistent opinion of Mr. Michael's, and he re-evaluated that. And I might point out that he re-evaluated that based on, on a lot of evidence that was coming before him. Mr. Michael has never had federal review, but he does have substantial meritorious claims in this case, claims that this court itself has recognized as being significant. This court itself was troubled enough by this case that it initially, it actually remanded the case for full federal review of the constitutional claims. And that was done in 2007? And the full federal review confirmed what was done three previous times, but, that he was competent. But there's, there are such meritorious, competency, you know, in, in, in Indiana v. Edwards, you know, the, the Supreme Court said. Or Edmund, you mean? I'm sorry? Is it Edwards or Edmund? Edwards. Edwards. The 2000 case? Indiana v. Edwards, 2009. Oh, I can't think of another one. Yeah. Yeah, no, not, not the Edmund case. The, the Supreme Court said mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times and in different ways. There is mental illness that can interfere with the voluntariness or the decision someone makes. And I, I use the word decision in, you know, guardedly. Because it's, it's different than incompetence. And, and the Supreme Court has always recognized that. That's why there are different standards for voluntariness versus incompetence. And that's where you lose me. Because if he was incompetent, obviously you have a big arrow in your quiver. But if he's competent, how do you prove the, the opposite of that? That somehow, yes, he's competent. He can make a decision on his own and legally. But some, he's, he's too mentally ill in order to do that. I'm, I'm lost. Not, not that he's, no, but that his, that his decision making was impaired by, by his mental impairments. In other words, he was in a position where the, the conditions of his confinement and, and his, his obsessive compulsive disorder, which was diagnosed when he was still in state court. His Asperger's, which was, you know, which was diagnosed and, and where Dr. Redstein considered it to be a possibility. But obsessive compulsive or Asperger's doesn't normally lead one to commit a crime or murder. The issue is not that those things compelled him to commit a crime of murder. It's not an issue of his guilt or his innocence. It's an issue of whether or not at the time of his federal petition in this court, he was, he was, he felt the need to waive his claims because he didn't think he could go on living at that time. He now wants to go on living. He's been found competent to decide that he wants to go on living. At that time, his mental illness had not receded to the point where he could see that far forward. His mental illness has receded to that, to as of this point. But at the time he was in district court, he was in such despair and he's been diagnosed with, with, with brain damage and cognitive defects and, and all sorts of mental illness issues, the, which the Commonwealth has acknowledged. Those things were interfering so badly with his desire to live that at that time he didn't desire to live. But within a few months, he began to see his way clear. The mental illness receded enough so that he could actually consider the options. It's like, you know, if you are, if you have a gun to your head, you can see that as being an involuntary decision making. Well, for Mr. Michael, his mental defects were like having an internal gun to his head. He could not see beyond what was happening at that moment. But look, I have a question here. Sure, Judge Greenberg. In this corpus case, if you prevail and get rid of habeas corpus, the result is that the court detries him for the crime for which he's been convicted within a period that the court sets, six months, whatever it may be. What is your ultimate goal in this habeas corpus proceeding? Well, first of all, Your Honor, let me say that, that the ultimate goal here today is that the court undertake, identify this properly as being a 60B6 motion, and then on its own or by remand, review the extraordinary circumstances that justify the grant of equitable relief here. Your Honor, I'd like an answer to my question. Absolutely. If, if Mr. Michael is granted federal habeas review, then of course the constitutional claim, and that would be done by the district court. Right. And, and if he, and if he is, he makes out a meritorious constitutional claim, then he's entitled to whatever relief that claim would bring with it. If it's because of ineffective assistance of counsel at sentencing, he would be entitled to, to be resentenced. And, and that's what we're seeking. I mean, that's, that's certainly the, the, you know, a very strong claim here is that he had a lawyer who performed deficiently beyond anybody's imagination, and that he had, he had prejudice that, that would warrant his, his getting a new sentence in hearing. Well, how about, how about... If it was a constitutional violation, that's what he's entitled to. Now look, under Strickland, you have to show deficient performance and prejudice. Do you claim that his lawyer was deficient at the guilt aspect of the trial, and he was prejudiced, so he's entitled to a new trial on whether or not he was guilty? Now look, please don't answer some other question. Answer that question. In other words, we get to the merits. Yes. In other words, is he ultimately contending that his lawyer was deficient at the guilt aspect of the trial, and that he was prejudiced by the deficiency, and that he's entitled to a new trial all the way back to the beginning of the case, in effect? Your Honor, that is one of the four claims that is, constitutional claims that is in his habeas petition, and yes, trial counsel was so deficient in his performance that he never did anything to investigate the crime in this case. Do you claim... So that is a claim that would be under consideration by the district court. Let, let, let the judge... I'm sorry. The question is this, do you claim that he did not kill and murder this woman? Your Honor, I don't think I can answer that question in the absence of an investigation that took place, that should have taken place back at the time of this, of this crime. But certainly, we have put allegations in the petition, and there are allegations in the petition, that make out a prima facie case of ineffective assistance of counsel in the guilt innocence phase of trial, and ineffective assistance of counsel in the, in the raising of the issue of whether or not at the time of trial, counsel was, failed to, to acknowledge red flags of incompetence. So, I'm not sure if that fully answers your question, but... One of the questions was that sentencing, how was counsel ineffective at sentencing? At sentencing, the way he was ineffective was that, first, he never investigated mitigation in the case. He apparently did, I mean, he was told by the judge, not district judge, but the trial judge to investigate, he did... Two weeks before sentencing. And there were some questions relating to whether his brother had some part of this, and the attorney felt that he could not bring that up ethically. I'm sorry, Your Honor, are we talking about guilt innocence now, or sentencing? Sentencing, I'm talking about sentencing. Okay. And he specifically instructed his counsel not to present mitigating evidence at that time, did he not? Not until about two days before the actual sentencing hearing, and as of two weeks before the sentencing hearing, by which time a competent lawyer would have already done a full mitigation investigation. Trial counsel had done nothing as of that point. So, yes. The trial court tried to convince Michael to at least discuss mitigating evidence and witnesses, and Michael indicated that there's no one he wanted to call on his behalf. And do not go talk with any members of his family. And preferred that he not even talk to his family. What he said, Your Honors, was that he didn't want his family drugged before the court. And that's true. But Mr. Michael also said very clearly that he wanted to put the Commonwealth to its case. He had, there was evidence in the record that was mitigating evidence. There was evidence of his remorse. There was evidence of his suicide attempts. There was evidence in the pre-sentence report for other convictions he had that indicated that he had substance abuse, that he had emotional and physical abuse as a child. Those were all in the pre-sentence reports, and those were things that could have been presented to a mental health expert who could have testified without dragging his family into court, which was something that he considered to be very painful. But I would also point out that when you have a lawyer who fails to do any investigation, fails to consult with you, his lawyer announced to the court at the point at which he was ordered to investigate mitigation that he hadn't spoken to his client in months. I mean, at that point, you know, the fact that a capital litigant is in despair and doesn't think there's anything, you know, left to do because he's not been presented with any possibilities, not been presented with any options, that's a very different situation from the situation where someone has said, don't talk to me about this. I will not do this under any circumstances. Get you back on rebuttal then. I'm sorry? We'll get you back on rebuttal. You have seven minutes left. Thank you very much. Thank you. Mr. Barker. Thank you, Your Honor. May it please the court. James Barker from the Attorney General's Office on behalf of the respondents. If I say the Commonwealth, then I apologize, but I guess that's the equivalent of the respondents anyway. As we have made clear in virtually all of our filings, we have a consistent position. We believe that no matter how this motion is construed, it is subject to dismissal or denial, regardless of the terminology. Dismissal is a little tough because the district court never did reach the merits, did it? Well, when I'm talking about this motion being dismissed, I'm referring to if it's construed as a second or successive petition, it would be dismissed for failure to get it certified. However, to go to your point. The question being that the district court lacked jurisdiction over the 60B motion by considering it to be a second or successive petition when, in fact, never once had the merits been dealt with on a first petition. Correct. And that's what the footnote in Gonzalez that's been discussed is all about. What it says is that if the reason the merits aren't considered is the defendant's own conduct or the conduct of his counsel, that's an exception to that rule where if the merits aren't considered, this isn't a second or successive petition. We haven't, of course, really dealt with that yet. I mean, Wiltshire sort of dealt with it in a not precedential opinion. And we've cited a couple of cases that have applied it as an alternate holding. What, Post and Blystone? Post and Blystone. They did deal with the merits on the first one. They did deal with the merits. However, they pointed out that in the alternative that this was the sort of second bite at the apple for those defendants, and based on footnote five, that would be another reason for not considering this to be a Rule 60B motion. It's actually an alternative holding in both cases. Counselor, can I ask you this question, a procedural question? Is there any other proceeding in any court, state or federal, other than this case in our court today? There is currently no other proceeding relating to this case, Your Honor. Okay. Going back to the Gonzales argument, what we have here, and Counsel quoted the last paragraph, I would point out that what Justice Scalia said there was we hold that Rule 60B motion is that the 2254 case is not to be treated as a successive habeas petition if it does not assert or reassert claims of error in the move in state conviction. We would submit that that's consistent with our position, which is this is a movement who is reasserting his claims of error from the state court. He waived them voluntarily and now is trying to present them again, and that would actually constitute a second petition. It's already been decided that he waived it the first time around. And when Judge Vanasky, as the district judge, made this determination, he did specifically say that this was a voluntary waiver. Now, Counsel pointed out that Judge Cosgrove has tried to raise that, and I'm not exactly clear on how he would do that except as an appeal from the finding of waiver. And the appeal that was before this court until 2011 actually involved the decision to allow Counsel out of the case. But the issue I have with your reading of Gonzales is if the merits of his, Mr. Michaels' habeas claims were never reviewed by the district court, how can it be said that a 60B motion is, quote, in effect asking for a second chance to have the merits determined favorably? Well, if you read footnote 5, it says that if it's the defendant's conduct that prevented the first time, then that is roughly the equivalent, I guess you would say, of a merits determination because he waived. That was so solid. The Fifth Circuit, when they looked at it, talked about your position somewhat favorably but then backed off and dealt with it in another way. Well, I would submit that they dealt with it. And refused to make the opinion precedential. That's true. But I would submit that as in Post and in Blystone, as well as the. . . Which is the same thing with Ward v. Norris, which was the case where the attorney had been granted leave to conduct discovery and he never did. But again, in Ward and also the Eleventh Circuit case, frankly, the merits had been dealt with. And that's correct. And each court said that, but they added also this is a second bite at the apple type case, which is what footnote 5 is referring to. There would be an exception for cases of fraud and so forth. But this is a case where. . . What's the apple? Getting a merit determination. Well, what's the merits here is what I'm suggesting. The merits of. . . He's saying that the waiver was not valid. Now, there had been a determination by a district court in 04 that it was. . . No appeal from that determination. Okay. So that's a final judgment. And now here, ten years later, eight years at the time this motion was filed, we simply seek to set that aside. And it's our position that what Gonzales is teaching in footnote 5 is when it's the petitioner's own fault that the merits were not reached, that is effectively a merits determination for these purposes. That's the equivalent of the merits. If the petitioner stops the court from reaching it, it's as if the merits had been reached. That's exactly my point, Judge Greenberg, yes. Let's assume. . . Let's go on to the next point then. The 60. . . Let's assume for the moment without conceding that the 60B motion was adequately brought. Would you address how it was not timely? To start with, under Rule 60B-2, which if you are going to consider this to be a Rule 60B motion. . . Then it's one year. Then it's one year. And we would submit that the petitioner repeatedly makes this a 60B-2 motion. He keeps referring to additional evidence, and that's new evidence. Simply calling it additional instead of new doesn't change its nature. But if it were 60B-6, it has to be a reasonable time, and how is this time unreasonable? This time is unreasonable because this is information that's been available to the petitioner all along. Judge Cosgrove, in his affidavit that's quoted at length in the petitioner's brief, says he knows all about Asperger's, and this was Asperger's. So this was known all along. There are questions early on about this defendant's obsessive-compulsive disorder and so forth. There are plenty of reasons to question this. So we're talking about still waiting from 2004, even if one assumes that it was after the district court decision, until 2012 to file. The response to that is, well, we couldn't because there was an appeal pending. Under this court's precedent, that doesn't stop the filing of a Rule 60B motion. What happens then is that the district judge looks at it and issues an order saying, this is something that has substance and I will look at it. That is to be provided to this court in the form of a motion for a remand. That now exists in Rule of Civil Procedure 62.1, and that specifically allows for this procedure. That became effective in 2009. We're still talking about three years later after that. The cases cited by opposing counsel all predate Rule 62.1, so they really are inapposite. They're from other circuits anyway, and this court had held at least as early as, I believe it was 1987 that this was the procedure to follow. The 1987 case, which Hancock Industries, that cited back to a 1983 case, which in turn cited back to a D.C. circuit case from the 1950s. This has been the law for a long time. There's no reason that this couldn't have been done 10 years ago. And so regardless of whether it's considered a Rule 60b-2 motion or a Rule 60b-6 motion, this is far from timely. Now let's go to the merits. Let's just assume if we get that far, if a 60b motion were granted, address the merits, if you would, for the habeas petition. The specific issues that the court asked to have briefed, the ineffective assistance of counsel regarding competency and the failure to litigate that. It's a little bit puzzling. Three or four times now he's been found to be competent. I don't know what counsel could have done pretrial to change the defendant's competency. So the underlying claim itself has no merit. It would have been futile to pursue that avenue, and so that claim simply doesn't survive even a cursory review. There was the ineffective assistance of counsel claim regarding the stipulations. The defendant was competent. He decided to do this. Stipulating is something that is permissible in every court. In that way, it was the defendant who prevented the sentencer from hearing any further mitigating circumstances. With respect to the information that was before the trial court, the trial court has discretion to decide that that doesn't amount to a mitigating circumstance. It made that decision premised on the fact that Mr. Michael never developed the argument and never developed the evidence. So without knowing to what extent these various mental health problems may have affected his thinking, the trial court certainly was within its discretion to decide that that doesn't constitute mitigating factors. And finally, the voluntariness of the guilty plea, that's been litigated repeatedly, and once again the defendant was competent. At the time that it was entered, he indicated that that's what he wanted to do. His vacillation later doesn't change the voluntariness of the entry of the plea at the time that it was entered. How many claims were actually made on the merits by Mr. Michael? Off the top of my head, I don't recall. By my count, there were about four. Correct. And those are the four that I went through. And, of course, you can get into sub-issues. We've heard some argument about the purported innocence of the petitioner, despite the fact that there's page after page in the brief expressing his remorse for having committed this crime. I mean, part of the problem I have is that in your briefing, you only dealt with those four claims on the merits, if you ever got to them, in four pages. I mean, it takes a lot more than that, doesn't it? I'm not saying you wrote it. Maybe you didn't write the brief. Well, I did. Frankly, I think that what I wrote was sufficient to address these claims. I don't think that they are substantial. I know the court has said previously that they are. But when I look at them, ineffective assistance of counsel for failure to litigate competency. Competency has been litigated four times. What more is there to address than that, except that he was competent, he's been found competent repeatedly. Counsel can't be ineffective for failing to raise that. So as far as developing the arguments further, I don't, not one of them. Well, I think part of it may be that if you ever got to the merits, that, yes, maybe he was competent to take certain actions, but the counsel should have on his own looked at mitigating circumstances. And had he done so, he would have discovered that there were at least a number of cases or a number of avenues that he should have explored in depth and that he might have come up with some significant mitigating evidence. I mean, obviously, if you have two aggravating circumstances, or maybe three, depending on what you believe about prior convictions, then you really have to, it all depends, life or death, on if you can come up with something on mitigating. And I agree, Your Honor, except for the fact that the defendant didn't want any mitigation and he stipulated that there was no mitigation. So anything the counsel did in that regard simply was outweighed by what the defendant personally chose to do. I don't know how you can find prejudicial ineffectiveness under those circumstances. This defendant did not cooperate, did not want his family involved, and frankly, to present this sort of mitigation, you would need the family involved. Judge Greenberg, any further questions? I don't have anything else. Thank you. Thank you very much. Ms. Dinello. One question I have of you, Ms. Dinello, is what are the extraordinary, assuming we get to 60B-6, what are the extraordinary circumstances, again, you're suggesting? The extraordinary circumstances are that Mr. Michael's waiver was the manifestation of his brain damage and his mental illness, that the doctor on whose opinion the district court relied for finding that his waiver was voluntary very soon after the hearing was over came to this court, wrote to this court and said, you know, I have to reconsider that opinion. We've seen that. In 07, he had a chance to come back. But he tried to. He tried to. He tried to get reevaluated, and the evaluation that he was permitted was only one of whether or not he was competent to go forward with his appeals, not whether there was voluntariness in his waiver initially to the district court. And that, by the way, has never been reviewed by this court on appeal, because this court on appeal has held to such a narrow line of only reviewing the 848 issue here, where this court actually found that the district court erred in removing both our office as counsel and Judge Cosgrove as counsel. You didn't find that it was prejudicial, but you did find it was error at that point. Had counsel been on the case all that time, continuously, it might have been that. Let's just go back to Dr. Westing for a second. He suggests the possibility in 2007 of there being Asperger's. Yes, and in 2004 that the waiver wasn't voluntary, even based on his determination then of obsessive-compulsive disorder and brain damage and other factors. I'm sorry. But no. Why wasn't the Asperger's diagnosis and its possible effect on waiver not investigated until 2012? Because there was no opportunity to do that. Most of the time this case was before this court. And this court would have been authorized. The easy way to deal with that is to ask this court to remand for the determination. And that's what Judge Cosgrove did over and over again. Judge Cosgrove was here on at least three different occasions. And then Mr. Travis was here on at least one occasion. And each time, each time, they said, please send this back for a redetermination of the volunteering of the waiver or send it back for review on the merits. And then they got back to when Judge Cosgrove got back to the district court. And it was for the purpose this court remanded for the limited purpose of determining whether or not Mr. Michael was competent to go forward with the appeal on the 848 issue. Judge Cosgrove went to Judge Vanaski and said, please, please, I urge you, it's the equitable thing to do, it's the right thing to do, to examine Mr. Michael in addition for whether or not, let Dr. Redstein examine him to determine the voluntariness of his initial waiver. And the district court said, I can't, my hands are tied. That's what the whole reason is for Rule 60b-6. It's to untie the hands of a court that has been constrained by the narrow legal, the narrow legal issues that are before it. And this court has done this before, even in the absence of mental, of mental defect or mental health issues. Let me back up for a second. In 04, I think the argument that the waiver wasn't valid was because he was suppressed by the prison conditions he was then in when he made that waiver, is that correct? Yes, and he had begun to vacillate. So Asperger's wasn't part of the equation at that point in time, is that correct? That's correct. Asperger's became part of the possibility when it was mentioned in when, 07 or had it been investigated sometime before 07? In 07. And by that time, the case was fully before this court. The time that the Asperger's, the only time the Asperger's was really able to be investigated, was when our, was after this case had gone through all of the legal stages and was in clemency proceedings. And by the way, the finding of the Asperger's, the decision doesn't have to turn on that. That evidence that we were able to put before the court because of the clemency proceedings, supports and confirms what the involuntariness that Dr. Wedstein was already concerned about. So when did Dr. Swartz-Watts question or meet with Mr. Michaels? The first time that she was able to, which was the day before his clemency proceedings, which was two days before his scheduled execution, because we fought with the prison all of the period of time of his clemency proceedings to get her permission to actually be able to meet with Mr. Michael in person. And by the way, we also consulted with Dr. Wedstein at the beginning of the clemency proceedings to see if he would go and evaluate Mr. Michael at the point where he finally could do that. And he felt constrained by the fact that he was court appointed and didn't feel that he could do that unless the court ordered him to do that, which was the case all along, was that he had never had that permission. But let me just say this also. In Fahy, you ruled that there were extraordinary circumstances, which Fahy, who had also waived, you ruled that there were extraordinary circumstances, because this was a capital case, that justified equitable tolling in that case. In Blystone and Thomas – Yeah, but the problem with – there's also some language in Fahy that really hurts you, where we say that if a defendant who has participated in a waiver proceeding is then allowed without exception to change his mind whenever he chooses, the doctrine of waiver will be rendered purposeless, close quote. And that's, to some extent, what a lot of people have argued in this particular case, that he keeps going back and forth, and at some point, if he's found competent, he's allowed to decide for himself whether any of us agree with that decision. Your Honor, again, I would stress the fact that there is a difference between competence and voluntariness and actions that are impelled by mental health problems and defects. And I would also say that – Well, if you're – I'm sorry. If you are competent, then you are able to make a decision on your own rationally. How does something override that without making you incompetent? Because when you feel that you do not have a choice in a matter, and it is a mental compulsion, that is different from being able to consult with a lawyer and articulate to a court that you want to make a choice. Mr. Michael doesn't have enough and didn't at the time have enough insight to be able to explain why he felt like he needed to die at that time. But let me also say that the whole purpose of Rule 60b-6 is that it constitutes, as this Court has said and other courts have said, a grand reservoir of equitable power to do justice in a particular case. This is a case which has strong merits on the underlying claims. The U.S. Supreme Court has said it vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice. There is a strong public interest in ensuring that someone has federal review of his claims. The Fifth Circuit in Ruiz said courts universally favor judgment on the merits, and the underlying case here is sufficiently significant and potentially meritorious that it should not be cut off at the knees. Equity would not deny such a person a hearing on the merits. But what can cut a case off at the knees is if the person who is the most affected and is deemed to be competent makes a decision, whether we agree with it or not, to say let it go. Your Honor, people make decisions on very serious matters at different times, and those decisions get changed at different times. This very Court remanded this case for full merits review and then changed its mind about that. And I don't mean to suggest that that was an improper decision. At that time, because of the legal issues that were squarely before the Court, this Court felt it was necessary to do that and to say we want to be able to come back and give some guidance to the district courts about what to do in a case like this. This is a man who, for reasons that may ultimately be unknowable, felt at the time that his federal habeas petition was filed that he wanted to die and he didn't want to litigate his claims. He came back within weeks of the dismissal of the petition and realized I do want to go forward. If this Court at that time had said, federal review, you now have counsel, we will not accept any pro se petitions anymore, we wouldn't be in this state, and 10 years wouldn't have gone by. Although actually his decisions here relating to not putting forward as much evidence as he could go all the way back to what, 1994, at the sentencing, where he said don't look for mitigating evidence? Again, you know, I just want to remind you that he didn't say that. He said that he was uncomfortable having his family drugged into court. But there were obvious issues there because his counsel said he had told him, look, this is very important, and the Court had said to him, you really ought to think long and hard about not having mitigating evidence. Actually, that's not what the Court said. What the Court said is, you know, if you want to go forward with this, that can be arranged. When Mr. Michael, a couple of days before sentencing, said that he wanted to go forward with sentencing, the Court said to him, the Court said to him, if you want to die, that can be arranged. We don't have to do a sentencing hearing. You don't have to put on mitigation. And Mr. Michael, at that point, still was saying, no, I want mitigation. I do want mitigation. All he said was that he didn't want his family brought in. And you've dealt with this situation before. You've dealt with it in Blystone. You've dealt with it in Thomas. Those were both defendants who didn't want family testimony, and you ruled that counsel has to do a thorough investigation of all the mitigation that's out there. Otherwise, and the Supreme Court ruled similarly in Rampilla. So this is not new ground that we're covering here. This is exactly the type of case that has been before this Court in the past. I believe this is a totally appropriate case for this Court to exercise its equitable powers under Rule 60b-6. Let me ask you this question. We've been hearing this argument for an hour, and during the hour, I have yet to hear the name of the victim mentioned or the family or anything about them. How about the fact that somebody got murdered, and that this man made it clear that he murdered her, and the family has had to live with this for, what, decades now? Does that come into an equitable matter? I mean, this is a terrible thing. Put yourself in the position of that family. Your Honor, first let me say, in some ways I can. I have four children of my own, and I was at the clemency hearing. I heard his family speak, and this is a terrible, terrible tragedy. And, frankly, being frank with the Court, this case is never going to result in Mr. Mico getting a new trial on guilt innocence. This case is really about sentencing, and I think we can all agree with that, Your Honor. And, you know, I think that it is important to remember in a case like this that while there is, this is one consideration to be taken into account in examining the extraordinary circumstances, the tragedy that leads to this is awful, but Mr. Mico is not going unpunished during any of this, even if he gets sentencing relief. Even after he's had O'Hagan's review, if he gets sentencing relief, he will spend the rest of his life in prison. Well, I actually asked you the question of whether or not you would be saying that the question of guilt or innocence could be raised, and you made it clear it could be raised, unless I didn't hear it right. Your Honor, you did hear it right because when I was up here before, I was reluctant to say that the claim of guilt innocence was not one that had much chance of winning at all and probably has no chance of winning. And I think it's clear from everything that we've argued that this really is an issue of sentencing and whether or not a lawyer who comes into court who hasn't investigated the aggravating circumstances, some of which could have been contested, who hasn't spoken to the members of Mr. Mico's family at the beginning when they came to him asking for a mental health evaluation, who has to be ordered to investigate mitigation, who after Mr. Mico attempts suicide in prison never got the hospital records of his suicide attempt, that that kind of deficient performance is something that should be reviewed by a federal court. I mean, I just think that this is the most appropriate case in which this court ought to be exercising its equitable jurisdiction. As I understand it from the State's response, this is the only case pending at this point in this case. Is that right? That's true. Yes, it is. In theory, if we affirm, he should be executed. Well, in theory, if you affirm he should be executed, that's right. I mean, we would probably ask for en banc re-hearing, but yes, you're right. All right. I understand that. But if the en banc was not denied, then the next step would be the execution. It's hard to picture any further petitions that could be filed anywhere. No, other than a petition for certiorari with the Supreme Court, Your Honor. But, I mean, it's hard to picture a fresh proceeding. No, there are no other proceedings that I am aware of that could be brought at this point. I'm not sure why you're asking the question, but that is true, that if you all affirm right now, then there is a very great likelihood that this mentally impaired man who's never had federal review of his claims will be executed. Thank you very much, counsel. Thank you to both counsel for very well-presented arguments,  Recess. Thank you, Your Honor.